Ms. Fitz is here for McGroarty Mr. Agarwal is here for Swearingen Mr. Fitz, you may begin when you're ready Ms. Fitz, let's wait for Mr. Agarwal Good morning, may it please the court, my name is Anne Fitz and I represent the appellant Michael McGroarty. I'll be focusing my argument today on the primary issue raised in this appeal, which is whether the continuing violation doctrine extended the statute of limitations period in the court below. Subject to any questions that the court may have concerning the applicability of United States v. Nichols, we would rest on the briefs for that argument. The Middle District of Alabama's decision in Doe v. Marshall makes it clear that the due process violation of fundamental rights that Mr. McGroarty asserts in his complaint is not simply the consequence of one-time registration as it was determined by the district court, but instead constitutes a continuing violation as contemplated under the three-part test promulgated in Kuhnley Brothers Inc. v. County of Geauga, which is a case cited by the Marshall court, and that that causes the statute of limitations to accrue on a daily basis. Kuhnley Brothers is reported at 103 F. 3rd, 516. It's a Sixth Circuit case from 1997 and is the leading case on the applicability of the continuing violation doctrine in due process. Let me just ask you one question just to make sure we're on the same page. So your client's information appears on this Florida website? Correct. Because he has moved out of state, since he moved out of state, he has not had to do anything affirmatively. He has not had to provide any information to the state, is that correct? That is correct. So it is the mere fact that it was on this website before he left and it remains on this website after he left the state? That's correct. And in the state of North Carolina where he currently resides, he is not recognized or classified as a sex offender under North Carolina law. And so he is not on the North Carolina registry or the North Carolina sex offender website. So he only appears on the Florida sex offender website, the FDLE sex offender website. And that's what our violation is that it violates his right to travel and to have all of the coverage that Florida actually infringes on that fundamental right. And he lived in California at some point too, is that correct? Yes ma'am. And there's no website issue with California? There is no, no. He had actually transferred his probation out to California and while he was in California and on probation, he was included on the registry. His probation terminated in 2012, shortly thereafter. His probation terminated in March, I believe, and in October of 2012 is when he moved to North Carolina. When he moved to North Carolina and left the state of California, California removed him from their online registry. In 2012, when his probation terminated, he was notified of his continuing sex offender registration requirements under Florida law, right? Yes, sir. He was. He could have filed his substantive due process claim in 2012 when he received that notice. Well, the notification, Your Honor, says nothing about the fact that he would be, that his personal information and photograph would be disseminated for his lifetime under Florida law. And that is actually because under the actual registration statute, there is nothing that or public dissemination of registration information. He wasn't notified that he was going to be on the list for life? He was notified of his requirements that he would have to, that he was subject to registration for life, but he was not notified of the fact that he would be, that there would be public notification and public dissemination of his personal information. That is nowhere on the letter and it is also nowhere in the law, in the registration law. And that would be under Florida statute section 943.0435. Now what the law provides is that under section 943.043 subsection 1, the FDLE, the department may notify the public through the internet of any information regarding sexual predators and sexual offenders which is not confidential and exempt from public disclosure. So did the Florida Department of Law Enforcement, did they do anything other than just maintain the website? Well, they, the FDLE, they collect information, registration information, and then they disseminate that information through the website. But that, the website has existed since before 2012? Yes, the law went into effect in 1997, which is at the same time that I believe that the website went into effect. The website though is not, it is not mandatory under the law. It is a discretionary vehicle that the department can, that FDLE can use to disseminate information as it chooses. But Florida hasn't been updating the website since your client left the state of Florida? That's not true. They update it all the time. And in fact, when we first filed the complaint in this case, FDLE had three violations listed for Mr. McWherty. And after the filing of the complaint, FDLE updated that to list five violations that he was convicted of instead of the three. So, they do have the ability to go in and to update it at any time, update the information in the website. So, the website was updated with regard to Mr. McWherty after 2007? Yes, it was, it was updated with regard to his violations last year. And that would have been around November 2018 when we filed the complaint, yes, your honor. And every time they update it, then that constitutes a continuing violation that would take his claim, his substantive due process claim, outside of that four-year statute of limitations? No. What we're saying is the continuing violation is the daily dissemination of his information publicly over the internet. Every day? Every day. Every day. So, to say that his information is on the website with the label sexual offender is, it provides an opportunity while he's living in North Carolina for potential employers, for neighbors, for fellow church members, for anybody to look him up on the internet and see that. So, there would be no statute of limitations, he could file it at any time he wants to? That's exactly our point, your honor. Yes, sir. Can you explain? Go ahead. How do you address the Supreme Court's decision in United Airlines v. Evans when they're talking about, and that's in an employment discrimination arena, but it's talking about whether, in looking at whether there's a continuing violation, merely because there is a present effect to a past illegal act is not going to constitute a continuing violation? Correct. And that's why I've cited the Coonley Brothers Inc. v. County of Geauga, that Sixth Circuit case that is cited by Dovey Marshall. It's also been cited by and followed by the Seventh Circuit, Eighth Circuit, Ninth Circuit, and the Eleventh and First Circuit with regards to a separate but related issue regarding the continuing violation doctrine. But basically, in Coonley, the court differentiated between a due process violation alleging a deprivation of property, such as under the takings clause, and a deprivation of liberty, such as under the right to travel. And what the court found was that when you have, for example, a deprivation of property, that the minute that you're deprived of property, that's when the statute of limitations starts running. However, with a deprivation of liberty, when you're talking about a law that's depriving you of constitutional liberty protection, that every day the law is in effect is every day that you're being deprived of your rights. And so it doesn't actually require an affirmative action. Basically, in that case, the defendant had argued that there was no continuing violation because the defendant did not commit any affirmative invalid acts on a repeated basis. We do have a case here in the Eleventh Circuit, the HIP case, the Liberty National Life Insurance, and it's addressing the continuing violation theory that you seem to be advancing and seems to be rejecting it out of hand, that if a series of events should have alerted a reasonable person to act to assert his or her rights at the time of the violation, the victim cannot later rely on the continuing violation doctrine to overcome the statutory requirement of filing a charge. This is an EEOC situation. Correct. But your client has known about his information being on this website since 2012. So how are you able to take advantage of this continuing violation theory in light of HIP? Well, there's actually, so you're talking about a precipitating event or notification. And in this particular situation, there is no notification of public dissemination over the Internet of his information, and there's no precipitating events. But he was notified. No, ma'am. No, he wasn't. He received a letter that told him that he had certain requirements that he had to comply with for a lifetime, including registration, checking in with Sheriff's Office, reporting updates and address, and things of that nature. But the letter is silent as far as his information being placed and publicly disseminated on a daily basis for the rest of his life. When did he learn his information was on the website? He never received notification of that. And did he? Is there any evidence in the record? There is no evidence. No, there is no. There's no evidence in the record. And there may be no evidence because you didn't raise the continuing violation theory, I mean you, your side, below. So the issue of what he was notified about didn't come up. And when it was, you didn't claim that he was violated, he was, there was a new violation every day because he didn't know. That wasn't an argument below. Well, in the, in the state's motion to dismiss, they, they raised Maguson v. Bailey and as And the district court made a ruling on it, except that all the things you're arguing now about the continuing violation theory weren't argued below because it wasn't an argument of your side. Well, there was no precedental cases in this circuit until the handing down of Doe v. Marshall. And that was on the same day, that was February 11, 2019, which was the same day that we filed our notice of appeal. There was no precedent for us to follow. That's the first reported case in the circuit. So if the clock didn't begin to run in 2012, when does it begin to run? It runs on a daily basis, Your Honor. Every single day that Mr. McGordy's Why wouldn't it, if we follow your argument to its logical conclusion, why wouldn't it begin to run when he learned that this information was on the Florida Department of Law Enforcement's website and that it would be disseminated to the public? Because every single day that his information is publicly disseminated on the internet with the label sexual offender is every day that he has a violation of his fundamental rights. Without an affirmative act on the Department of Florida? That's correct. Every day that Florida puts his information out there, they can easily, Your Honor, take his information off of the internet and he would still, it would not affect his registration in Florida at all. They can easily do that. And every single day that they choose to put his information out there, they infringe on his constitutional rights. And I will reserve the rest of my argument for rebuttal, Your Honor. Thank you, Ms. Fitts. We'll hear from Mr. Uggerwall. Good morning, Your Honor, and may it please the Court. Amit Uggerwall for the FDLE Commissioner. If the Court is agreeable, I'd like to start out by emphasizing a very significant practical consequence of accepting Plaintiff McGordy's position in this case, to which Your Honor, Judge Wilson, referred in your colloquy with opposing counsel, and that is, I believe Your Honor asked opposing counsel, if your position is correct, the practical consequence is that there is no statute of limitations for challenges to information put up on the website. And I understood opposing counsel to say that's exactly their position. And I think we should think about that for a second and whether it's consistent with the principles that this Court has consistently enunciated in its statute of limitations jurisprudence. Because there are social policies that are embodied in Florida Statute 95.11, Subsection 3, and that this Court has consistently stressed have to be effectuated unless there is a clear exception that applies to the statute of limitations. And here's what some of those social policies are. You've got not just finality and repose, but also avoiding unfair prejudice to the party who's trying to defend against the claim, especially in the context of an as-applied constitutional challenge to a duly enacted statute. How would that apply here? Well, Mr. McGordy says that it was unreasonable for the State of Florida to believe that he might continue to maintain ongoing contacts with the State after he completed his sentence, he moved out of the State, and his termination, his supervision was terminated on March 14, 2012. Well, the State of Florida was not bound to accept those representations, and we might very well have contested those factual allegations. What kind of evidence would we rely on? We might rely on information about people who had been actively involved in Mr. McGordy's supervision. They might have had knowledge about commercial interests and business transactions that he was involved in. They might have had knowledge about continuing contacts that he has with the State of Florida. As the Court is no doubt aware from its review of the record in this case, there was also a dispute between the parties in the litigation below about the very facts and circumstances surrounding Mr. McGordy's criminal convictions that formed the basis for the sex offender designation that's at issue in this case. Those are all the types of facts that ordinarily a defendant should be able to raise in the context of an as-applied challenge. What happens when you get 5, 10, 15, 20 years out, or if Mr. McGordy's theory is accepted, 50 years out, is that evidence no longer becomes available. Officials leave, records are moved and destroyed, memories fade, and that doesn't just prejudice the defendant. It also prejudices the Court, which is tasked with adjudicating these claims, and the Court has a right to have information that is as accurate as possible in the context of adjudicating these claims. So, that's all a long way of saying that the social policies embodied in the statute of limitations are emphatically implicated by this litigation, and what we haven't seen Mr. McGordy ever say is that there was any reason why he could not have filed this lawsuit back in March of 2012. The Court asked opposing counsel... Well, he says that in response to that, that the clock should begin to run when he was aware that he was subject to the registration requirements, because that's all he was notified of in 2012, but the clock should begin to run when he realized that the information would be disseminated, available to the public. What do you have to say about that? I have a couple things to say about it, Your Honor. First, the applicable legal standard that this Court has set out in its cases does not turn on Mr. McGordy's subjective awareness of the facts. The test is, when would a plaintiff have either known or reasonably should have known with the exercise of reasonable prudence? And this is a standard that Mr. McGordy himself accepts in his brief to this Court, citing, for example, this Court's published decision in McNair v. Allen. So, it's a more objective test, but here, in any event, we can satisfy either standard or either the subjective or the objective test. And first, let's start with the notification to which Your Honor refers, which is the letter from the Department of Corrections that Mr. McGordy received, dated March 14, 2012. The very second sentence, this is a docket entry for 8-4 at page 2, the very second sentence of that notification advises Mr. McGordy that he will continue to be considered a sex offender, notwithstanding the completion of his sentence. Then, if you go down to numbers 7 and 8 of that letter, they tell him a couple of things. First, that the sex offender registration requirement in Florida is a lifetime requirement, and they advert to Florida Statute 943.0435. Why is that important? Well, for two reasons. One is because if you look at the applicable statutes, and I'll talk about one of them in just a second, they make it absolutely clear that under Florida law, the FDLE ordinarily is going to maintain this information on its website, and just by way of example, I would direct the Court's attention to Florida Statute 943.043, subsection 1, and to the first two sentences of that provision. I'd also point the Court to Mr. McGordy's opening brief to this Court, and this is at page 15. This is important. Mr. McGordy, in his opening brief to this Court, says he's interpreting Florida Statute 943.0435 to include a registration requirement, and his understanding of the plain language of that provision is that that plain language includes a requirement that the sex offender designation and accompanying information be put on Florida's website. His understanding of the statute, not ours. In any event, a plaintiff with reasonably prudent regard for his rights would have known that his information had been on the FDLE website since, according to Mr. McGordy, 2004, could easily have inquired in 2012 whether that information would continue to remain on the website, and if Mr. McGordy really believed that maintaining that information on the website after he left the state was adversely affecting his constitutional rights, the short answer to Your Honor's question is that there is nothing that would have prevented a reasonably prudent plaintiff from inquiring into that and then asking FDLE whether they could take that information down. I'd also like to address Judge Branch's question to opposing counsel about the HIP case, and that line of authority provides a narrow and relatively simple basis for affirming the judgment below. In published decisions like HIP versus Liberty National Insurance Company and Center for Biological Diversity v. Hamilton, this Court has said time and again that the continuing violations doctrine, which really forms the predicate for Mr. McGordy's appeal to this Court, is premised on the equitable notion that the statute of limitations ought not to begin to run until such time as a plaintiff either knows or reasonably could have known about all the facts supporting the cause of action. And I don't think we always see any kind of good, adequate answer to that line of authority, either in Mr. McGordy's reply brief or in his submission to this Court. It's notable that counsel has never, Mr. McGordy in the District Court and in this Court, has never said that he did not know that his information was up on that website, and he's never represented that he could not have known with the exercise of reasonable prudence. That's a factor on which the District Court relied in its decision below, and it absolutely provides a narrow and independent basis for affirming the judgment below because you don't even have to ask how the equitable doctrine of continuing violations would apply because at the threshold, he can't invoke to that doctrine under this Court's precedence. I would like to respectfully direct the Court's attention to one case that really makes that, a couple cases that make that very clear. One is this Court's decision in Center for Biological Diversity v. Hamilton, and in particular, the last page of Center for Biological Diversity v. Hamilton. There, this Court relied on the principle that you adverted to, Judge Branch, the principle in HIP, and it said, it was responding to the plaintiff's argument, relying on a different authority that said that non-action can be considered a continuing violation. And this Court said that argument, that non-action can constitute a continuing violation, contradicts this Court's precedent, quote, narrowly construing the continuing violations doctrine. The exact same analysis applies here because at the end of the day, what Mr. McGordy is really complaining about is continuing non-action. That is to say, his beef at the end of the day is that back in 2012, the state of Florida didn't take his information down from its website, even though he had completed his sentence and moved out of the state. Well, that's non-action. The information was up on its website. It wasn't taken down. And his submission to this Court is that that continued non-action constitutes a distinct violation. The Court asked opposing counsel, well, are you saying that you have a new violation every day? And opposing counsel said yes, but actually you'd have a distinct violation every nanosecond. Every single nanosecond that information remains on the website and the Department doesn't take it down would constitute a new violation. Are there updates to the information by FDLE? There are no updates that Mr. McGordy is challenging as inaccurate or illegal or that form the basis for the constitutional challenge. Now, Mr. McGordy has represented to the Court that there are certain updates that were made after he filed this litigation, adding an additional conviction to the list of convictions that's up there. I accept counsel's representation for purposes of this argument, but counsel, as I understand it, hasn't argued that that information is inaccurate. Counsel's argument is all of the information, the fact that he's been designated a sex offender, all of the underlying convictions that go back to 2001, 2002, all of that has to be taken down. Actually, I didn't hear an argument that the updates themselves were a new day for the statute running. That's right. That's right, Your Honor. You don't hear an argument to that effect, and you certainly don't see that argument raised in plaintiff's initial brief to this Court, and it's therefore been waived under this Court's well-established waiver doctrine, that if you want to rely on that kind of new argument, you can't raise that kind of new argument for the first time on appeal, and if you're going to do it, you certainly need to do it in your opening brief to the Court. What if Mr. McGordy asked the FDLE to take down the information and they refused to do it? Would the clock begin to run again such that he can sustain a substantive due process claim if he has not previously done that before? I don't think so, Your Honor. I think that would be a way of circumventing the applicable statute of limitations, and as Your Honor's question to opposing counsel suggested, he could have asked FDLE to do that back in 2012. So the fact that he sat on his rights from 2012 until 2018 doesn't mean that he can resurrect stale claims just by resorting to the expediency of belatedly asking FDLE to take down information that, according to Mr. McGordy, the federal constitution required it to take down back in 2012. I would also just finally like to emphasize a couple of the cases in which this Court has discussed how the doctrines that we're talking about today apply to sex offender registration requirements, and in particular, I'd like to direct the Court's attention to Megasin and to Moore. These are unpublished dispositions. They're not binding on this Court, but I think they do illustrate some of the big problems with Mr. McGordy's position. Now, Mr. McGordy says, well, in Megasin and in Moore, the defendant was or the plaintiff was challenging the fact of his designation as a sex offender. But what this Court's precedents recognize is that it's always going to be linguistically plausible for a litigant to recharacterize a complaint that has to do with an old violation as exclusively targeting the latest manifestation of injury or harm that's attributable to that old violation. And so, for example, in Megasin, the plaintiff was complaining about his classification as a sex offender, but he could have easily recharacterized that claim to challenge present, ongoing, continuous dissemination of his personal information on the FDLE website pursuant to an allegedly invalid statutory scheme or pursuant to an allegedly erroneous designation as a sex offender. And what this Court's cases stand for is the proposition that that kind of artful pleading doesn't get you around the statute of limitations. That instead, you need to look at the gravamen of the claim, the substance of the claim, and ask exactly the question that Judge Wilson put to opposing counsel at the outset of this argument. And that is, why couldn't Mr. McGordy have brought the exact same claim back in 2012? What are the facts that he did not know back then, or could not have known with the exercise of reasonable prudence back then, that prevented him from bringing this lawsuit back then? That's the kind of analysis that this Court has applied in its prior cases. In the Moore decision, the plaintiff actually did try to challenge his designation as a sex offender. It was an erroneous designation. It was obtained under duress while he was incarcerated. And in January of 2010, he successfully persuaded the U.S. Attorney's Office to intervene on his behalf. His information was taken down from the website. He filed suit in February of 2010, less than one month later. And notwithstanding all the equitable considerations that applied in this case, none of which apply here, this Court said it's past the statute of limitations. He could have brought that same claim back in 2005. I see that my time is about to run out. I'm happy to answer any other questions that your honors might have. I think we have your argument. Thank you, Mr. Ogglewam. Thank you. And Ms. Fitz, you've reserved some time for rebuttal. Yes, sir. I just want to make it clear that in Megasin and in Moore, the challenge specifically was the act of being registered. It was the classification of being, for example, Megasin versus Bailey. The plaintiff there was actually challenging his classification as a sex offender. He was saying that that was wrong to include him as a convicted sex offender and to have him register as a sex offender. We are not contesting that. Mr. McWherty qualifies to be classified as a convicted sex offender. What we are challenging here is the discretionary application of the law that FDLE has put into place with regard to the public notification component. That is the public dissemination of his personal information over the internet. The legislative purpose of putting his information on the internet is for public safety. But the law is not narrowly tailored to achieve this objective. And the application, FDLE's application of the law, I should say, because the law is silent as to whether or not a registrant's information must remain on the internet for their lifetime. It does, the law does not say that. The law says that FDLE has the discretion to decide how to notify the public through the internet with what information. Can you explain to me your theory of privileges and immunities violation? That might help me understand the statute of limitations. Okay, so basically the argument is the violation of law is that we complain of is that it is a due process violation of Mr. McWherty's fundamental right to travel with respect to the privileges and immunities clause. That is, under the right to travel, under that doctrine, there is embodied the idea that if a citizen of one state moves permanently to another state, that he has the right as any other citizens of that state to enjoy all of the privileges and immunities afforded under the law of that state. And so that's what we're saying. He moved to North Carolina. He's not considered to be a sex offender in the state of North Carolina. And yet, despite the fact he has no jurisdictional nexus to Florida whatsoever, Florida continues to disseminate his personal information that's outdated, but it has his photograph and his name and his date of birth with the label sexual offender. And that is very similar to in Doe versus Marshall, the driver's license, the branded driver's license that the court found compelled speech under the First Amendment. And that is, is that it was a piece of identification that was branded as a criminal sexual offender. And what the court found was that that was not the least restrictive means possible to to alert law enforcement, which was the purpose of that requirement, that an individual was a sex offender, that they could have labeled it with a Y, for example, in law. So you're saying that his inability to get jobs is because of something on the. No, ma'am, I'm saying that the state of Florida is violating his rights to be treated as every other citizen in the state of North Carolina. Every other citizen in the state of North Carolina who committed sex offender offenses in Florida is going to be listed in Florida. We're saying that that that we're not saying the registration violates his rights. We're saying the public dissemination of his registration information violates his his rights in North Carolina. If he if he has a potential employer that has to accept North Carolina's limitations as far as public notification because of the fact that Mr. McGordy is a permanent citizen of the state of North Carolina, that that and he has no jurisdictional nexus to the state of Florida, that Florida may not disseminate his information over the Internet. That has no jurisdictional boundaries on it. He can remain on the registry. We're not arguing that he should be removed from the registry. We're arguing that he should the public notification. He should be on a secret registry. We're saying that Florida should not be disseminating his information publicly. Thank you. Ms. Fitts, you've submitted supplemental authority this morning, Cunley versus the County of Gago? Geauga, yes, sir. And, you know, we would appreciate the authority in advance. This is a 1997 opinion that should be, if the opinion is relevant, we'll read it, but it should be included in the briefs. It's not supplemental authority unless the authority is after the briefs are filed. All right, yes, sir. I apologize. Thank you. Court is in recess for 15 minutes. All rise. And it looks like...